IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| VASILI ROGATCH, Plaintiff, | |
| v. | C. A. No. 06-541ML |
| MICHAEL CHERTOFF, et al, Defendants. | |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Government respectfully moves to dismiss Plaintiff's Complaint for want of subject matter jurisdiction, for the reasons set forth in the attached supporting legal memorandum.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Adi Goldstein
ADI GOLDSTEIN, #6701
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: adi.goldstein@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify this 22nd day of March 2007, I caused a copy of the foregoing Government's Motion to Dismiss to be electronically filed with the Clerk of the Court using the CM/ECF system.

I further certify that a copy of the foregoing document was served by United States Mail, postage prepaid, first-class to Vasili Rogatch, 40 Harvest Street, Cranston RI 02920.

/s/ Adi Goldstein
ADI GOLDSTEIN, #6701
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: adi.goldstein@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| VASILI ROGATCH, Plaintiff, | : | |
| v. | : | C. A. No. 06-541ML |
| MICHAEL CHERTOFF, et al, Defendants. | : | |

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

This is an action in which plaintiff, VASILI ROGATCH, seeks an order compelling defendants to expedite his application to adjust status to lawful permanent residency. For the reasons set forth below, the case should be dismissed for lack of jurisdiction.

By statute, adjustment of status is committed to the sound and unfettered discretion of the Secretary. Neither the Immigration & Nationality Act ("the Act" or "the INA"), nor the applicable regulations specify a time frame within which an application must be adjudicated; the Act expressly removes adjustment-of-status decisions from the orbit of judicial review; and, putting the Act to one side, the discretionary nature of the process at hand renders mandamus and review under the Administrative Procedure Act ("APA") completely inappropriate.

Not surprisingly, therefore, a host of cases have dismissed

suits such as this one for lack of jurisdiction. Accordingly, for the reasons set forth below, the Government respectfully asks that this motion to dismiss be granted.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he has resided legally in the United States since March 2000. He alleges that on or about March 16, 2004, he filed an I-485 Application to adjust status on the basis of his employment and become a permanent resident of the United States. Plaintiff alleges that his employment-based application was filed along with an immigrant petition for alien worker which was approved on September 24, 2004. Thereafter, plaintiff was fingerprinted in December 2004. Plaintiff alleges that he has contacted the USCIS numerous times about his case status since April 29, 2005, via their customer service phone line, in order to determine why his case has been delayed. According to the plaintiff, he was told that it was delayed pending the FBI background check. Plaintiff filed a FOIA request with the FBI in November 2005. The FBI replied that it had no records responsive to the request. Plaintiff alleges that notwithstanding every inquiry by him, the service has not acted on his application and that he therefore has been unable to (1) obtain legal permanent residence; (2) advance his application for citizenship; (3) advance his career; and, (4) has suffered financial losses associated with filing for extensions of work and travel

authorizations with the USCIS. Complaint at 18.

Based on the foregoing, plaintiff advances two substantive causes of action. First, he seeks relief under the APA, 5 U.S.C. § 555(b), which provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." (Civil Cover Sheet). Second, plaintiff petitions the Court to issue a writ of mandamus pursuant to 28 U.S.C. § 1361, compelling defendants to perform a duty owed to the plaintiff, to wit process his application for permanent residency. (Civil Cover Sheet).

## III. LEGAL ANALYSIS

### A. The Immigration & Nationality Act

The adjustment-of-status statute, Section 245(a) of the I.N.A., 8 U.S.C. § 1255(a), provides, in part, that the status of an alien who has been admitted or paroled into the United States "may be adjusted by the [Secretary], in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . ." (emphasis added). Granting or denying the application is thus discretionary. Significantly, neither the plain language of the statute nor the enabling regulations specify a time frame within which the Secretary must act on the application. Id.; 8 C.F.R. § 245.

The process, in short, is quintessentially discretionary, and it is one which is removed from the ambit of judicial review by two subsections of 8 U.S.C. § 1252:

(a) First, Section 1252(a)(2)(B)(i) provides that, notwithstanding any other provision of law, including the mandamus statutes, 28 U.S.C. § 1361 and 1651, "no court shall have jurisdiction to review any judgment regarding the granting of relief under section . . . 1255 of this title, . . . ."[1] In addition, Section 1252(a)(2)(B)(ii) expressly precludes judicial review of "any other decision or action of the . . . Secretary of Homeland Security the authority of which is specified under this subchapter to be in the discretion of the . . . Secretary of Homeland Security . . ." (emphasis added). See e.g., Safadi v. Howard, 2006 WL 3780417 (E.D. Va. Dec. 20, 2006)(discussing Section 1252(a)(2)(B) and granting motion to dismiss); Sharkey v. Ganter, 2006 WL 177156 (S.D.N.Y. Jan. 24, 2006)(same); and,

(b) Section 1252(g) of Title 8 states that, except as otherwise provided in that section, and notwithstanding any other provision of law, including the mandamus statutes, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the

[1] As amended by the REAL ID Act of 2005, H.R. 1268, 109th Cong. (2005)(enacted), Pub. L. No. 109-13, Div. B, 119 Stat. 231 ("the R.I.D.A.").

Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any aliens."

The case of Gomez-Chavez v. Perryman, 308 F.3d 796 (7th Cir. 2002) is directly on point. There, the alien filed an I-30 petition for alien relative, an I-485 petition to adjust status, and an I-212 petition for leave to re-apply for admission after removal, i.e., a waiver of inadmissibility. Id. at 799. He also commenced an action for a declaratory judgment and a writ of mandamus, asserting that the immigration service had improperly refused to adjudicate his I-212. Id.

The Court of Appeals for the Seventh Circuit ruled, however, that petitioner's arguments "fit[] squarely within the steps covered by the prohibition on judicial review" set forth in Section 242(g) of the statute:

> Under § 1252(g), courts are barred from reviewing discretionary decisions to "commence proceedings, adjudicate cases, or execute removal orders."

308 F.3d at 800 (citing Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999)).

The court of appeals noted further that these "strict limitations" apply not only to affirmative actions, but to refusals to act as well. Gomez-Chavez, 308 F.3d at 800. Thus, an alien attempting to seek judicial review of such "discretionary measures" cannot evade the bar of Section 242 "by the simple expedient of recharacterizing a claim as one challenging a

refusal to act." Id. See, e.g., Li v. Agagan, 2006 WL 637903 (8th Cir. March 14, 2006)(citing Section 1252(g), court denied petition for writ of mandamus to compel adjudication of adjustment of status application); Kailash v. Chertoff, 2006 WL 938523 (E.D.Pa. April 10, 2006)(same), appeal pending (3rd Cir., No. 06-2373).

B. Mandamus and Administrative Procedure Act

Nonetheless, plaintiff invokes the jurisdiction of the Court on two alleged bases: the mandamus statute, 28 U.S.C. § 1361, and the Administrative Procedures Act (APA). "The burden of proving jurisdiction is on the party asserting it," not the party challenging it. Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)(quoting Robinson v. Overseas Military Sales Corp. 21 F.3d 502, 507 (2nd Cir. 1994)). The Government respectfully submits that the decision of the Supreme Court of the United States in Norton v. So. Utah Wilderness Alliance, 542 U.S. 55 (2004), disposes of both prongs of this jurisdictional allegation.

There, the Court addressed, inter alia, the language in 5 U.S.C. § 706(1) that a reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed," 542 U.S. at 62. The Court noted, with emphasis, that "the only agency action that can be compelled under the APA is action legally required." Id. at 63. This limitation appears in §

706(1)'s authorization for courts to "'compel agency action unlawfully withheld.'" Id.

The Supreme Court reasoned further that the APA simply extended the traditional practice, prior to its passage, of achieving judicial review through a writ of mandamus and that the mandamus remedy was normally confined to enforcement of "'a specific, unequivocal command,'" Id. (quoting ICC v. New York, 287 U.S. 178, 204 (1932), and citing Kendall v. United States ex rel. Stokes, 12 Pet. 524, 613 (1838)("precise, definite act . . . about which [an official] had no discretion whatsoever"). Thus, as Norton held, §706(1) empowers a court only to compel an agency "to perform a ministerial or non-discretionary act." 542 U.S. 64.

The Supreme Court added that Section 706(1) also speaks of agency action which is "unreasonably delayed," the essential allegation here. Norton, 542 U.S. at 63 n.1. However, "a delay cannot be unreasonable with respect to action that is not required." Id. Thus, a claim under Section 706(1) can go forward only "where a plaintiff asserts that an agency failed to take a discrete agency action that it is *required* to take." Id. at 64 (emphasis original). Nor, under the Court's rationale, could a writ of mandamus issue absent such required agency action. In short, the APA analysis and the mandamus analysis are one and the same.

The Norton decision is controlling here. Adjudication of an adjustment-of-status application is a manifestly discretionary task. Neither the statute nor the applicable regulations specify a time-frame within which the adjudication should take place. There is no "discrete agency action that it is required to take." Norton, 542 U.S. at 64. There is no action which has been "unlawfully withheld," hence it cannot be said that the agency's action has been "unreasonably delayed." 542 U.S. at 63 n.1.

It is not surprising, then, that most courts to have addressed this issue, have followed Norton and denied motions such as the one advanced by plaintiff to invoke the jurisdiction of the district court. These cases repeatedly hold that mandamus is inapplicable, because of the discretionary nature of the process at issue. These decisions have also held that APA review is similarly inappropriate, inter alia, because the INA "preclude[s] judicial review," 5 U.S.C. § 701(a)(1), and because the APA expressly exempts "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(2)(emphasis added). See, e.g., Castillo v. Ridge, 445 F.3d 1057 (8th Cir. 2006)(mandamus inappropriate); Li v. Agagan, 2006 WL 637903 (8th Cir. March 14, 2006)(non-precedential)(same); Safadi v. Howard, 2006 WL 3780417 (E.D. Va. Dec. 20, 2006)(rejecting mandamus and APA allegations, citing, inter alia, 5 U.S.C. § 701(a)(2)); Keane

v. Chertoff, 419 F. Supp.2d 597 (S.D.N.Y. 2006)(same); Sharkey v. Ganter, 2006 WL 177156 (S.D.N.Y. Jan. 24, 2006)(neither mandamus nor APA applicable); Mustafa v. Pasquerell, 2006 WL 488399 (W.D.Tex. Jan. 10, 2006)(rejecting mandamus and APA cause of action); Karan v. McElroy, 2003 WL 21209769 (S.D.N.Y. May 23, 2003)(same); Zheng v. Reno, 166 F. Supp.2d 875, 879-880 (S.D.N.Y. 2001)(judicial creation of duty to act on adjustment-of-status application within specified time frame, where none is prescribed by statute, "'would have potential for mischievous interference with the functioning of already overburdened administrative agencies,'" quoting Wan Shih Hsieh v. Kiley, 569 F.2d 1179, 1182 (2d Cir. 1978)); Rahman v. McElroy, 884 F. Supp. 782 (S.D.N.Y. 1995)(mandamus does not lie to require immigration service to schedule adjustment-of-status interviews at specific time or in specific sequence). Cf. Dridi v. Chertoff, 412 F. Supp.2d 465 (E.D. Pa. 2005)(mandamus inappropriate absent specified time for adjudicating I-129F petition). But see, Salehian v. Novak, 2006 WL 3041109 (D. Conn. Oct. 23, 2006)(exercising mandamus jurisdiction to compel adjudication of adjustment-of-status application); Kim v. Ashcroft, 340 F. Supp.2d 384 (S.D.N.Y. 2004)(same).

The restraint exercised by the majority of the above cases is entirely appropriate, for reasons most recently articulated in Manzoor v. Chertoff, 2007 WL 413227 (E.D. Va. Feb.

5, 2007). Although Manzoor concerned a petition for naturalization, a process governed by a separate statutory framework, its reasoning also applies here. Id. at. *1. First, Manzoor observed that the courts are ill-equipped to conduct background checks for naturalization applicants. Id. at *7. In some cases, follow-up inquiry by the F.B.I. may be necessary, and once this process is completed, evaluation of the data assembled by the F.B.I., as well as any follow-up questioning of the applicant, are best left to the USCIS. Id. at *7. The same can readily be said of adjustment-of-status applicants.

Moreover, Manzoor quite frankly noted that the Court had no desire to provide any incentives to applicants to commence litigation as a device for expediting the naturalization process. 2006 WL 413227 at *7. It added that lawsuits such as the one before it "divert CIS's attention and resources away from the adjudication of naturalization applications." Id. Thus, Manzoor concluded that it "ha[d] no desire to make the filing of a lawsuit a means for a naturalization applicant to 'jump to the front of the line.'" Id. Such a result, while obviously addressing whatever injustice the plaintiff may have endured, only creates another injustice in its place, by forcing the applicant who did not file a lawsuit to wait even longer, while the litigation plaintiffs receive priority to which they have no intrinsic entitlement. Again, there is absolutely no principled

basis on which to distinguish between the naturalization applicant before the court in Manzoor and the adjustment-of-status applicant here.

Ultimately, the issue boils down to one of resources. As Manzoor notes, in fiscal year 2006, the F.B.I. processed more than 3.4 million name checks. 2007 WL 413227 at *2. If it had greater resources, the F.B.I. may do better, but this is a budgetary issue which needs to be addressed at the legislative and executive levels, and not, we respectfully submit, by the judiciary. See, e.g., Mustafa, 2006 WL 488399 at *5 ("'delays of this nature are inevitable and becoming more frequent in light of heightened security concerns in the post-9/11 world,'" quoting Alkenani v. Barrows, 356 F. Supp.2d 652, 657 (N.D. Tex. 2005)). This is precisely the point with which the court concluded its opinion in Safadi:

> It is worth noting that plaintiff's frustration over the pace of the adjudication process is better addressed to the political branches which, as the Supreme Court has noted, have "the responsibility for regulating the relationship between the United States and our alien visitors."

2006 WL 3780417 at *4 & n.7 (quoting Mathews v. Diaz, 426 U.S. 67, 81 (1976)).

CONCLUSION

For the foregoing reasons, the Government respectfully requests that its motion to dismiss be granted.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Adi Goldstein
ADI GOLDSTEIN, #6701
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: adi.goldstein@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify this 22nd day of March 2007, I caused a copy of the foregoing Government's Memorandum in Support of Defendants' Motion to Dismiss to be electronically filed with the Clerk of the Court using the CM/ECF system.

I further certify that a copy of the foregoing document was served by United States Mail, postage prepaid, first-class to Vasili Rogatch, 40 Harvest Street, Cranston RI 02920.

/s/ Adi Goldstein
ADI GOLDSTEIN, #6701
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: adi.goldstein@usdoj.gov