IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

***VASILI ROGATCH,***
*Plaintiff*

v. Civil Action No. **CA06-541ML**

***MICHAEL CHERTOFF, ET AL,***
*Defendants*

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

COMES NOW Plaintiff Vasili Rogatch, *pro se* and respectfully requests this Honorable Court to DENY Defendants' Motion to Dismiss as ungrounded, for the reasons set forth in the attached memorandum.

Respectfully Submitted,

Vasili Rogatch, PRO SE

40 Harvest Street,

Cranston, RI 02920, USA

Phone: 401-946-9173

Cell: 401-419-0208

e-mail: vrogatch@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2007, I filed the within Opposition to Defendants' Motion to Dismiss with the Clerk of the United States District of Rhode Island and a copy has been forwarded by certified mail, postage prepaid, to the Defendants' Counsel at:

United States Attorney

District of Rhode Island

Robert Clark Corrente,

50 Kennedy Plaza, 8th Floor,

Providence, RI 02903

Vasili Rogatch, PRO SE

40 Harvest Street,

Cranston, RI 02920, USA

Phone: 401-946-9173

Cell: 401-419-0208

e-mail: vrogatch@yahoo.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

***VASILI ROGATCH,***
*Plaintiff*

v. Civil Action No. **CA06-541ML**

***MICHAEL CHERTOFF, ET AL,***
*Defendants*

**MEMORANDUM IN SUPPORT OF OPPOSITION TO**

**DEFENDANTS' MOTION TO DISMISS**

PREFACE

On March 22, 2007, Defendants filed Motion to Dismiss as a response to Plaintiff's original complaint that was filed with this Court on December 13, 2006. Defendants allege that this Honorable Court lacks subject matter jurisdiction over the facts presented by the Plaintiff and, therefore, ask to dismiss Plaintiff's complaint pursuant to Fed. R.Civ. Pro. 12(b)(1). Plaintiff disagrees for the reasons set forth below.

ANALYSIS OF DEFENDANTS' ARGUMENTS

Here are the Defendants' arguments:

1. Defendants allege: "Neither the Immigration & Nationality Act ..., nor the applicable regulations specify a time frame within which an application must be adjudicated;"

This argument is the centerpiece of the Defendants' Motion. However, that is not what the letter of the law says. Section 202 (8 U.S.C. § 1571) of the American Competitiveness in Twenty-first Century Act of 2000 (AC21) clearly lays down the parameters of reasonableness in immigration adjudication, stating: "...It is the sense of Congress that the processing of an

immigration benefit application should be completed not later than 180 days after the initial filing of the application."

Congress also classified employment-based adjudications (the same as Plaintiff's) pending 180 days or more as "long delayed" in Section 106 (8 U.S.C. § 1154 (g)) of the AC21. It is clear that when Congress created employment-base adjustment of status procedure, its intention was that it should not take longer than 180 days. Plaintiff has been waiting for 1100 days.

Plaintiff does not have access to Defendants' internal regulations, but it is not difficult to find that timeframe implicitly exists in USCIS regulations. When someone applies for adjustment of status, he/she is eligible to receive employment authorization document (EAD – work authorization) and advanced parole (AP – travel document). Both EAD and AP are valid for one year only. They are not open-ended. FBI fingerprinting results expire in 15 months; FBI name check result is valid for 120 days only. USCIS publishes estimated processing time and directs people to contact USCIS customer service if their petition is 6 month or more outside of processing time. It seems that USCIS does anticipate AOS application to be processed in not more that 15 months. Otherwise why let fingerprints and background checks expire and waste taxpayers' dollars for repeated checks?

Even if the timeframe (albeit non-binding) was not set in the US laws, making people to wait for a potential life-altering decision for years, indefinitely, without setting a timeframe, is inhumane, cruel and unusual punishment, involuntary servitude (Plaintiff is forced to work at the same position and perform the same duties due to the specifics of employment-based immigration) and is a violation of the Constitution.

2. Defendants argue that mandamus action is not appropriate in this case because of the limitations set forth in 8 USC § 1252 (a) (2) (B) (i) and 1252 (g)

Plaintiff would like to point out that he challenges only the Defendants' timeliness in adjudication of his adjustment of status petition submitted to USCIS, not the granting or denial of petition, therefore the jurisdictional limitations of 8 U.S.C. § 1252 do not apply. Plaintiff is not

asking this Honorable Court to order Defendants to act in any certain way nor he is asking this Court to review Defendants' decision, Plaintiff is challenging the lack of thereof. The federal courts acknowledge that enacting 28 U.S.C. § 1361 is a proper way of action in these circumstances (see *Yu v. Brown*, 36F. Supp. 2d 922, 925 (D.N.M. 1999); *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 391-92 (S.D.N.Y. 2004); *Aboushaban v. Mueller* (C.A.N.D. 06-01280)). Cases *Safadi v. Howard, Sharkley v. Ganter, Gomez-Chavez v. Perryman, Kailash v Chertoff* referenced by the Defendants' in their Motion in support of this argument do not fall into the same category as Plaintiff's because in all of them plaintiff are asking courts to order a federal agency to make a specific decision.

Further, Defendants argue that they have power not to act upon Plaintiff's application according to 8 USC § 1252 (g), referencing *Li v Agagan* in support.

In other words, the federal government has power to block application or petition by refusing to act on it, thus effectively closing avenues created by law. This is the direct opposite of what is entrusted to the federal government by "We the people…". According to Article II Section 3 of the US Constitution, the federal government (through the President) "shall take care that the laws be faithfully executed". To prevent the Government from blocking avenues created by law the Congress enacted 28 U.S.C. § 1361. We are all mortals and cannot wait indefinitely.

The US Government has only delegated power. Its authority defined and limited by the Constitution and comes from "We the people…". As it is written in the Declaration of Independence: "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness. — That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed". And "The powers not delegated to the United States by the Constitution, … are reserved to the states …, or to the people" (Amendment X of the Constitution).

That is, "We the people..." (which is not limited to the citizens only in the context of the Constitution) have the right not to submit application or petition to the Government if we choose so, but it is the duty of the Government to act upon application or petition presented by the people. Other federal courts do agree that Defendants have a "non-discretional duty to process Petitioner's Application within a reasonable period of time" (*Yu v. Brown.*, 36 F. Supp. 2d 922, 925-31 (D.N.M. 1999).

3. Manzoor v Chertoff (2007 WL 413227)

Defendants reference this case in support of their position. Circumstances in *Manzoor v Chertoff*, however, are different than in Plaintiff's case. In *Manzoor v Chertoff*, plaintiff is seeking to invoke mandamus to speed up his naturalization application. In this instant case, Plaintiff is challenging the timeframe of processing his adjustment of status application. As Plaintiff stated earlier, both 8 U.S.C. § 1571 and 8 U.S.C. § 1154 (g) specify a timeframe (although non-mandatory) for employment-based adjustment of status application. Moreover, Manzoor, being a permanent resident, does not endure the damages and suffering that Plaintiff does in his situation without permanent residency status. Plaintiff is unable to advance his career, his wife cannot proceed with her education plans (she is not considered state resident), he endures financial losses, cannot travel without restrictions, effectively plan future retirement and education for his children (two of those were born on the US soil). None of this is applicable to Manzoor.

Indeed, the court handling Manzoor case noted that it has no desire to make the filing of a lawsuit a means for a naturalization applicant to "jump to the front of the line". Plaintiff is not looking to "jump to the front of the line". USCIS has adjudicated tens, maybe hundreds thousands of applications which are of the same kind as the Plaintiff's, but were filed later. That is abuse of discretion by the Defendants. Defendants argue that FBI is overburden by background checks and that FBI processed 3.4 million of background checks in FY 2006. Assuming FBI is processing background checks 24 hours a day, 365 days a year, it processing rate is about 400 checks an hour.

That is, average check takes about 9 seconds to complete. Plaintiff has been waiting for three years for the completion of his background check. In the light of the fact that FBI does not have any records associated with Plaintiff's name (see Exhibit F of the original complaint), three-year delay is clearly unreasonable. More likely, USCIS has never sent or FBI has never started processing request for a background check associated with Plaintiff's application. Plaintiff does not believe that such prolonged delay in processing of background checks is in the interest of the national security either. Inadmissible and potentially dangerous aliens should be identified as soon as possible.

It worth noting also that Manzoor, not satisfied with the court's decision, has filed a new complaint (Manzoor v Gonzales, P.A.E.D. 07-00934).

Defendants reference a host of cases in support of their Motion, but each one of them has one or more of the following: a) it has a different factual background; b) plaintiffs are requesting judicial review of a discrete decision or asking court to force respondents to make a particular decision; c) plaintiffs do not include violation of APA as a course of action. Not a single case referenced by the Defendants matches this instant case.

4. Defendants say: "the APA analysis and the mandamus analysis are one and the same"

It is not the same in regard to jurisdiction. In order to be eligible for mandamus relief, (a) the plaintiff's claim must have a clear and indisputable right to the relief he sought; (b) the defendant must have a non-discretionary duty to honor the right; and (c) there must be a lack of an alternative, adequate remedy (see *Castillo v. Ridge*, 445 F.3d 1057, 1060 (8th Cir. 2006)). If these elements are not met, the mandamus statute will not provide subject matter jurisdiction. The burden of proof here is clearly on plaintiff. Moreover, issuing writ of mandamus is in large part a matter of discretion with the district court. Plaintiff asserts that even if mandamus jurisdiction may rest on the Court's discretion in this instant case, alleged violations of APA by itself, as well as APA and federal question jurisdiction can be applied by this Court to assume jurisdiction. As a matter of fact, the

Supreme Court did not question jurisdiction in *Norton v. So. Utah Wilderness Alliance*, 542 U.S. 55 (2004) were plaintiffs alleged violations of APA (5 U. S. C. §706(1) in particular) by federal agency.

Firstly, through the APA, Congress has waived the government's immunity from judicial review when sought by "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute...". Plaintiff's allegations fit exactly within the parameters of 5 U.S.C. § 702 whereby plaintiff is seeking relief other than money damages and stating a claim that an agency or an officer or employee failed to act in an official capacity. A good example of applying APA provisions to dismiss claim of lack of subject matter jurisdiction is *Haidari v Frazier* (M.N.D., 06-3215). "..Plaintiffs seeking specific relief are given the right to sue the government in a federal court by the [APA] but the subject matter jurisdiction basis is the federal question statute. As such, where a plaintiff alleges that the defendant violated the APA, the court may exercise subject matter jurisdiction pursuant to section 1331."

Secondly, the federal question statute confers jurisdiction on this Court over actions "arising under" federal law. An action arises under a federal law where the statute creates or is a necessary element of the cause of action or it's a question of statue interpretation. The proper question to ask is what Congress meant by the term "within a reasonable time" in 5 U.S.C. § 555(b) and "unreasonably delayed" in 5 U.S.C. § 706. Plaintiff's understanding of "unreasonably delayed" is that there was no reason for a delay other than agency's failure to act. Plaintiff interprets "reasonable time" as "not unreasonable", which is essentially the same as "unreasonably delayed", i.e., the time it should take for something to happen during the normal course of events. In context of processing AOS application it is the time that is customary or close to average processing time for similar applications. If average processing time reported by USCIS to Congress is 8.2 months (in Q4 2006), then almost 3-year wait does not seems to be reasonable. We can also look for similar cases to determine what is "unreasonable" delay in regard to processing application for immigration benefits.

Here are a few cases resolved in other district courts: *Galvez v Howerton*, 503 F. Supp. 35, 39 (C.D.Cal. 1980) (holding a six-month delay unreasonable); *Paunescu v. INS*, 76F. Supp. 2d 896, 901-902 (N.D.Ill. 1999) (holding a ten-month delay unreasonable); *Yu v Brown*, 36 F. Supp. 2d 922, 925-31 (D.N.M. 1999) (holding a two-and-a-half year delay unreasonable). If this Honorable Court agrees with Plaintiff's interpretation and Defendants are not able to proof that there was another reason behind three-year wait other that USCIS or FBI's (or both) failure to act, Plaintiff is entitled to relief.

5. Norton v. So. Utah Wilderness Alliance, 542 U.S. 55 (2004)

In this case, Southern Utah Wilderness Alliance sought declaratory and injunctive relief for federal agency's (The Bureau of Land Management or BLM) failure to act to protect Utah public lands from environmental damage. Again, the nature of the case is different than Plaintiff's. Plaintiff can invoke mandamus and APA because a) the timeframe (expressed as intention of the Congress) for processing his application exists in 8 U.S.C. § 1571, 8 U.S.C. § 1154 (g); b) Plaintiff is suffering because of the Defendant's actions and, therefore, can ask court to intervene on the basis of 5 U.S.C. §§ 702, 704 "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party."; c) the Defendants have a non-discretional duty to process AOS application (*Yu v. Brown)*, only the granting or denying it is up to their discretion, so the Defendants' analogy with Norton case is inappropriate due to the facial and factual differences.

The Supreme Court noted that invoking 5 U.S.C. § 706(1) was not appropriate in *Norton v. So. Utah Wilderness Alliance* because "While §1782(c) is mandatory as to the object to be achieved,

it leaves BLM discretion to decide how to achieve that object. SUWA argues that the nonimpairment mandate will support an APA suit, but a general deficiency in compliance lacks the requisite specificity. The principal purpose of this limitation is to protect agencies from undue judicial interference with their lawful discretion and to avoid judicial entanglement in abstract policy disagreements which courts lack the expertise and information to resolve.". Plaintiff totally agrees with the Court's reasoning, but the situation is different in Plaintiff's case. Plaintiff is not trying to tell Defendants how to achieve the object, which is to process his AOS application. In Plaintiff's case the Defendants failed to achieve a very specific object, which, in addition, consists of specific steps defined by Defendants internal regulations. Plaintiff also alleges that one definite step (FBI name check) was mishandled either by USCIS or FBI. Defendants' failure is obvious here unless they prove that FBI was actively investigating Plaintiff's background for three years and that investigation was associated with "hit" in FBI database. In Norton case, the BLM was charged with failure to "manage [WSAs] . . . so as not to impair the[ir] suitability for preservation as wilderness", which is a very broad object. It was also very difficult for Norton court to decide if BLM indeed failed to achieve the required object, because, as the Court noticed, it lacks lack the expertise and information on the matter. That's not the case in the matter presented by the Plaintiff.

A NOTE ABOUT THE LACK OF SUBJECT MATTER JURISDICTION DEFENCE

"Dismissal for lack of subject matter jurisdiction will not be granted lightly." *Wheeler v. St. Louis Southwestern Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996) and "[t]he district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under [Rule] 12(b)(1)." *Drevlow v. Lutheran Church*, Mo. Synod, 991 F.2d 468, 470 (8th Cir. 1993).

When the sufficiency of the plaintiff's jurisdictional allegations are at issue, the court must take all facts alleged in the complaint as true and must draw all reasonable inferences in favor of the plaintiff.

CONCLUSION

Plaintiff asserts that this Honorable Court has subject matter jurisdiction over Plaintiff's petition under 28 U.S.C. § 1331, 28 U.S.C. § 1361; 28 U.S.C. § 1651; 28 U.S.C. § 2201; and under 5 U.S.C. §§ 551, et seq., 701 et seq. in conjunction with 8 U.S.C. § 1101 et seq. and the US Constitution (Amendments I, VIII, XIII).

Therefore, Plaintiff respectfully prays that Defendants' Motion to Dismiss be DENIED.

Respectfully Submitted,

Vasili Rogatch, PRO SE

40 Harvest Street,

Cranston, RI 02920, USA

Phone: 401-946-9173

Cell: 401-419-0208

e-mail: vrogatch@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2007, I filed the within Memorandum in Support of Opposition to Defendants' Motion to Dismiss with the Clerk of the United States District of Rhode Island and a copy has been forwarded by certified mail, postage prepaid, to the Defendants' Counsel at:

United States Attorney

District of Rhode Island

Robert Clark Corrente,

50 Kennedy Plaza, 8th Floor,

Providence, RI 02903

Vasili Rogatch, PRO SE

40 Harvest Street,

Cranston, RI 02920, USA

Phone: 401-946-9173

Cell: 401-419-0208

e-mail: vrogatch@yahoo.com